STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 10-756


ANDREW COX

VERSUS

EXTREME REAL ESTATE, INC.


**********


APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF ALEXANDRIA CITY COURT, NO. 111,461
HONORABLE RICHARD ERIC STARLING, JR., CITY COURT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Billy Howard Ezell, Judges.


**REVERSED AND REMANDED.**

**Thomas Overton Wells**
**P. O. Box 13436**
**Alexandria, LA 71315**
**(318) 445-4500**
**Counsel for Defendant/Appellant:**
**Extreme Real Estate, Inc.**

**Koby D. Boyett**
**P. O. Box 12746**
**Alexandria, LA 71315**
**(318) 442-7282**
**Counsel for Plaintiff/Appellee:**
**Andrew Cox**

**EZELL, JUDGE**.

Extreme Real Estate, Inc. appeals a summary judgment in favor of Andrew Cox. The summary judgment ordered Extreme to return a $2,000.00 deposit to Mr. Cox which he had deposited for the purchase of two residences.

## FACTS

On April 14, 2008, Mr. Cox entered into two separate contracts with Extreme for the purchase of two residences in Alexandria. A deposit of $1,000.00 was made on each contract by Mr. Cox. On August 25, 2008, Mr. Cox's attorney wrote a letter to Jeff Melder, owner and president of Extreme, requesting a return of the deposits because the requisite financing for the proposed purchase was not obtained.

Mr. Cox filed a petition for the return of the deposits on September 29, 2008. On June 15, 2009, Mr. Cox filed a motion for summary judgment. A hearing on the motion for summary judgment was held on July 24, 2009. At that time, Extreme had offered no evidence in opposition to the motion for summary judgment. The trial court gave Extreme three days to file any evidence in opposition to the motion for summary judgment and also gave Mr. Cox time to file any response to any evidence offered by Extreme. The case was taken under advisement.

The trial court issued written reasons for judgment on September 14, 2009. Finding that the language concerning financing was ambiguous and had to be interpreted against Extreme as the drafter of the contracts, the trial court ruled that Extreme must return the $2,000.00 in deposits to Mr. Cox. Judgment was signed on September 22, 2009.

The judgment also ordered Extreme to pay an additional $2,000.00 in damages to Mr. Cox for its failure to perform under the contracts. However, pursuant to a motion for new trial filed by Extreme, the trial court modified the award to eliminate

the $2,000.00 in damages awarded.  Extreme appeals the judgment arguing that it should not have been ordered to return the deposits.  It asks us to the reverse the judgment of the trial court and remand for a full trial.

## SUMMARY JUDGMENT

Appellate courts review motions for summary judgment de novo to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law.  La.Code Civ.P. art. 966(B).  A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."  *Id*.  The mover bears the initial burden of proof to show that no genuine issue of material fact exists.  La.Code. Civ.P. art. 966(C)(2).

"Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion."  *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, pp. 9-10 (La. 4/23/10), 35 So.3d 1053, 59 (citing *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606).

In support of his motion for summary judgment, Mr. Cox submitted both "**CONTRACTS TO SELL REAL ESTATE**".  The contracts are form contracts with blanks to fill in the necessary information.  Each contract provides that the purchase price is $64,000.00.  Each contract also provided that the original deposit was to be $2,500.00, but this number was marked through, and $1,000.00 was inserted.  This correction was initialed by both parties.  Section one of the contracts is also marked through and initialed.  Section one provided for the terms of the buyer's financing.  Section two on the first contract provides: "The buyer will have 30 days to find

2

financing. If buyer cannot find financing, seller will seek financing for 30 days. If buyer or seller cannot find financing, then deposit of $2,500.00 will be refunded to buyer". The second contract has the same language, but the blank for the number of days is left blank. Both contracts provided that the offer expired on June 14, 2008, at five p.m.

Mr. Cox additionally submitted his own personal affidavit, his wife's affidavit, and the affidavit of Donnie Hayes, a loan officer at Evangeline Bank & Trust Company. Mr. Hayes stated that he was the loan officer who personally handled Mr. Cox's loan application for the two residential properties. Mr. Cox submitted the loan application on May 22, 2008, seeking financing for the entire purchase price of both properties. Mr. Hayes determined that the purchase price of each property was $64,000.00 based on the contracts between Mr. Cox and Extreme. As a requirement of the loan process, an appraisal of the properties was conducted. The resulting appraisal evidenced a current fair market value of $123,000.00 for both properties collectively. For this particular loan application, Evangeline Bank would loan only seventy-five percent of the appraised value, or $92,250.00. Mr. Cox was notified that only partial financing was available for the purchase of the two residences.

Mr. Cox attested that he was unable to obtain financing for the purchase price of the two residential properties and that Extreme failed to provide alternative financing. His wife's affidavit confirmed Mr. Cox was unable to obtain financing or that Extreme offered alternative financing.

Extreme argues that Mr. Cox's affidavit should not have been considered because it contained hearsay, assumptions, and statements of intent. We find that Mr. Cox's affidavit was proper pursuant to La.Code Civ.P. art. 967 since it was based on his personal knowledge.

Extreme further argues that there is a question of material fact regarding the term "find financing". It claims that Mr. Cox did obtain financing from Evangeline Bank, just not 100 percent financing.

In *Louisiana Real Estate Commission v. Butler*, 04-1514 (La.App. 3 Cir. 4/6/05), 899 So.2d 151, the purchasers of a home submitted a purchase agreement to the sellers. The sale was contingent on the purchasers obtaining financing for the home, the amount of which was "to be determined," at an eight and one-half percent interest rate. The purchasers applied for a loan which was denied. This court found that nowhere in the purchase agreement was there listed any specific monetary amount the purchasers must have obtained loan approval for. The only condition was the interest rate. We found that the purchasers failed to meet the obligations set forth for them in the contract.

However, we also recognized that, pursuant to La.Civ.Code art. 2056, the provision "to be determined" had to be interpreted against the purchasers as the supplier of the contract. In the present case, Extreme provided the contract.

There is no indication in the contracts as to an amount of financing that would be required to complete the sale. In fact, the parties specifically marked out and initialed section one where Mr. Cox could have indicated that he receive approval for financing for at least a certain amount. That section provided: "This offer is subject to Buyer's obtaining a real estate mortgage for no less than $_____ Payable over _____ years with interest not to exceed _____% at customer terms with a firm commitment thereto _____ days from date hereof." There is also no indication in the contract as to what happens if the property does not appraise for the purchase price. Furthermore, nowhere in the affidavits is there any indication that Mr. Cox informed Extreme about his financing situation, giving Extreme a

4

chance to obtain financing pursuant to the terms of the contract.  The affidavits do indicate that Mr. Cox was able to secure financing for seventy-five percent of the appraised value.

We find that there are genuine issues of material fact.  The trial court erred in granting summary judgment.  For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.  Costs of this appeal are assessed to Andrew Cox.

**REVERSED AND REMANDED.**